## EZEKIEL BARLOW & another vs. THE OCEAN INSURANCE COMPANY.

The compromise of a doubtful claim or defence is a sufficient consideration for a promise.

The mortgagee of a vessel, and the general owner who was in possession, each procured insurance of his interest therein; and on the loss of the vessel, each brought an action on his policy, in different courts: The action brought by the general owner was tried, and was defended by the underwriters, on the ground that the plaintiff fraudulently caused the loss; but the plaintiff obtained a verdict: The defendants took exceptions to the proceedings at the trial, for the purpose of bringing a writ of error: Afterwards a compromise was made by all the parties to the insurance, without any misrepresentation or concealment by the mortgagee, and the underwriters agreed to pay the amount of the verdict obtained against them by the general owner, and to pay a part of the mortgagee's loss, which he agreed to accept in full of his claim: The underwriters thereupon gave their note to the mortgagee for the amount thus agreed on, and he withdrew his action against them. *Held,* in an action on this note, that the underwriters could not defend, by introducing evidence, discovered after the compromise and note were made, of the general owner's fraud in causing the loss of the vessel.

THIS was an action on a promissory note for $3097·93, dated March 13th 1839, payable in six months to the defendants' own order, and specially indorsed by their president to the plaintiffs, who are merchants at St. Johns, New Brunswick.

The trial was before the chief justice, who made the follow·

ing report of it : The execution and delivery of the note were admitted by the defendants. The defence was, that the note was without consideration, and was obtained by fraud. It appeared that on the 1st of May 1837, the defendants underwrote a policy, by which Rice & Thaxter, merchants of Boston, for the use of the plaintiffs, were insured to the amount of $ 4800, on a vessel called the Francis, for one year from that date. The vessel was valued at $ 8000. A similar policy was made by the defendants, on the same day, for Robert Fields, the master and general owner of the vessel, for $ 3200, the balance of the valuation thereof. The plaintiffs' interest in the vessel was that of mortgagees or pledgees ; the vessel being pledged to them to secure payment of money due to them to an amount greater than the sum insured for their use.

The vessel sailed from St. Johns after the policies attached, and was soon after cast away, surveyed and condemned, under such circumstances as to induce a strong suspicion on the part of the defendants, that she was cast away by the fraudulent act or procurement of the master ; and they determined to refuse payment of the loss on that ground. The plaintiffs brought a suit on their policy in the court of common pleas in this county, and said Fields brought an action on his policy, in the circuit court of the United States for the district of Massachusetts. The latter was tried in November 1838, and the defendants defended on the ground of such fraud ; and though, on the trial, witnesses testified strongly to acts of fraud by the plaintiff, (the master) yet their testimony was so much discredited by other evidence, that the defendants did not rely upon it, and a verdict was returned against them. Sundry exceptions were, however, taken, with a view of carrying the case before the supreme court of the United States.

In this state of things, a negotiation was opened in February or March 1839, for the settlement of both policies by compromise. Fields, the master, was in Boston acting for himself ; and the plaintiffs acted through their agents, Rice & Thaxter. Thayer & Bates, merchants, were the agents of Fields, and acted for him in his absence, and assisted him in the negotiation

This negotiation resulted in a compromise, by which the defendants agreed to pay the amount of the verdict obtained by Fields in the circuit court, and to adjust and state the loss on the plaintiffs' policy, and to pay the amount thereof, deducting $ 1000. This settlement was indorsed on the policy, and the note now in suit was given, and the plaintiffs' action withdrawn. At the time of this compromise, the defendants had waived no rights to defend themselves, in any suit to be brought on the plaintiffs' policy, upon any ground ; but their expectation of sustaining a defence, on the ground that the loss was designed and fraudulent, was much diminished by the result of the trial on Fields's policy, and the discouraging advice of their counsel as to maintaining their exceptions in that case.

The defendants now offered to show, that after the compromise was made and the note given, information was, for the first time, discovered and communicated to them, that in breaking up or repairing the vessel, it manifestly appeared that she had been scuttled from the inside ; that several auger holes had been bored through the outside plank, and plugs slightly inserted, which might easily be removed, &c. and the whole concealed by the sand ballast. They also offered to give evidence of the circumstances of the voyage and the loss of the vessel, to render it probable that this act of scuttling was done by the master, and so to prove that the loss was fraudulent.

The plaintiffs objected to the admission of any evidence to show fraud in the loss of the vessel, and insisted that they had an interest independent of that of Fields, and were not bound by his acts, except so far as he was master of the vessel insured, and that in making the compromise, they acted for themselves and by their agents, and that their settlement could not be affected by any secret knowledge of Fields as to the casting away of the vessel.

The chief justice ruled, " that if the settlement for the plaintiffs with the defendants was made and concluded by their own agents, Rice & Thaxter, for the plaintiffs, on their own interest, such settlement could not be impeached on the ground of fraud, though Fields, the master, had secret knowledge that the vessel

was fraudulently cast away, and though the interest of the plaintiffs was derived from a hypothecation by Fields ; nor because Fields, with such secret knowledge — he denying all fraud in the loss — made a compromise and settlement of his own policy at the same time." It was also ruled, " that the note might be impeached on the ground of any fraudulent misrepresentation or concealment in conducting the negotiation which led to the compromise ; but as the claim on the policy by the plaintiffs, and the right to defend on the ground of the fraud of another in casting away the vessel, had been settled and compromised, it was not competent for the defendants to give evidence of such fraudulent loss, caused by another, in defence of the suit on this note ; although other evidence of such fraud had been discovered, much more stringent, direct, and conclusive of the fact, and which was not known to the defendants at the time of the com promise."

A verdict was taken for the plaintiffs, subject to the opinion of the whole court upon the correctness of the aforesaid ruling.

*Peabody*, for the defendants. It was for the jury, and not for the court, to decide whether the compromise embraced the objection now made ; and the rejected evidence should therefore have been admitted. *May* v. *Christie*, Holt N. P. 67. Fraud vitiates any adjustment or contract. So an adjustment may be set aside, if made under a mistake of "facts not known." 11 Petersd. Ab. 440 – 444 ; 1 Phil. Ins. (1st ed.) 501, 502 ; 2 ib. 352 ; and cases there cited.

Proof that the vessel was destroyed by the fraud of the master would avail the defendants, as a defence, in this suit. The plaintiffs must be treated as the owners of a part of the vessel, and therefore the master was their servant or agent, for whose acts they are responsible ; or they take their interest under him, and therefore can have no greater rights than if the master were the assured.

*C. G. Loring & Bartlett*, for the plaintiffs. Where the facts are not controverted, and require no inferences to be drawn from them, the result is matter of law. It was therefore not for the jury to decide upon the extent of the compromise.

An adjustment obtained by fraud is doubtless void as to the party so obtaining it ; but this is so, on the principle that the parties have treated, without suspicion, and on the ground that the apparent or asserted facts are true and full.    It is otherwise where a fraud is charged, and a compromise is made ; though one party may, in such case, deal without the knowledge of facts known to the other.    The compromise which was made probably binds the defendants, even as to Fields.    Otherwise, an alleged fraud could never be effectually compromised.    And certainly, against the plaintiffs, who were ignorant of any fraud, and who neither asserted nor concealed any thing ; who relinquished a portion of their claim, in consideration of a waiver, by the defendants, of their defence on the ground of Fields's supposed fraud, and took new security for the balance ; such supposed fraud can never again be set up.    *Hoge* v. *Hoge*, 1 Watts, 216, 217. . *Brown* v. *Sloan,* 6 Watts, 421.    *Zane* v. *Zane,* 6 Munf. 406. *Kennedy* v. *Davis,* 2 Bibb, 343.    *Holcomb* v. *Stimpson,* 8 Verm. 141.    *Union Bank* v. *Geary,* 5 Pet. 99.    *Stapilton* v. *Stapilton,* 1 Atk. 10.    *Cann* v. *Cann,* 1 P. W. 727.    *Longridge* v. *Dorville,* 5 Barn. & Ald. 117.    *Haigh* v. *Brooks,* 10 Adolph. & Ellis, 309.

HUBBARD, J.    (After stating the facts, and the ruling of the judge at the trial.)    The defendants object to the ruling of the court ; and while they rely, as they allege, on the general proposition, that fraud vitiates all contracts, they maintain the position, that where a party makes a compromise of one suspected fraud, he may afterwards resist such compromise, when it is attempted to be legally enforced, by proving the existence of another fraud, which, if known, would also have vitiated the original contract, and which was not discovered till after making the compromise ; and that the evidence upon which such proof rests should have been submitted to a jury.

If the facts, which were offered to be proved in this case, had been of an entirely different character from those which gave rise to the compromise, and would have constituted a substantial and independent defence to the claim ; or if the facts now newly discovered by the defendants had been known to the plaintiffs, as

the time of the compromise, and had been designedly concealed by them ; or if they had been personally implicated in relation to them ; a case might have been presented by the defendants, requiring very careful consideration. But in the present instance, the evidence which is offered consists of facts of the same nature with those, the alleged existence of which led to the compromise. They do not constitute an independent ground of defence. They alike go to prove that the vessel was designedly cast away by the master ; and no suggestion was made, on the trial of this case, against the integrity and good faith of the plaintiffs, or of their agents in Boston, or that they had any knowledge of the manner in which the vessel is believed by the defendants to have been destroyed. Nor was any attempt made to prove that they were guilty of any misrepresentation or fraudulent or designed concealment of material facts, at the time of making the compromise ; nor is it pretended that they were not interested in the subject of the insurance, to the amount insured. So far as appears, both plaintiffs and defendants were alike ignorant at the time of effecting the settlement.

The case, therefore, is simply this : A party effects a policy of insurance, and upon the happening of a loss, the underwriters refuse to pay, on the ground that the master, who was interested in the vessel, and had a separate insurance upon such interest, made a fraudulent loss of the vessel by casting her away ; and in consequence of such alleged defence, the plaintiffs, in good faith on their part, submit to compromise their claim, and take three fourths for the whole. Shall such compromise be set aside, by reason of the subsequent discovery, by the defendants, of other and distinct facts going still more clearly to prove that the master bored and scuttled the vessel, and so occasioned the loss ? And to the question thus stated, and which presents the defendants' case, we have no hesitation in answering that the compromise ought not to be disturbed. No adequate cause exists for disturbing it. No fraud is imputed to the party making it, and there is no such mistake of facts as led the defendants to an improvident settlement, and which good faith might require should be revised. The parties stood in the same position as to

information. One believed a fraud had been committed, which if proved would establish his defence. The other feared that it might be so. Under these circumstances, they came together, and without misrepresentation or fraud on either part, they entered into a compromise by which one party rece ved less than the amount of his contract, which, if free from the taint of fraud, would be wholly due, and the other saved a part of what he was bound to pay, unless he should succeed in establishing the existence of such fraud. Each party understood the law of his case ; each understood the bearing of the facts ; and with such knowledge the agreement was made. An agreement so made is upon a substantial consideration ; and why should it not be enforced ? No new fraud is discovered ; no new ground of defence to the original contract has arisen ; nothing to show that it was originally void. But the defendants, on further investigation and search, have now put themselves in possession of facts, by which they ascertain more accurately the manner, as they believe, of the commission of the fraud which was the subject of the negotiation and compromise ; and they are now satisfied, that if no compromise had been made, and more time had been taken by them, the fraud could have been distinctly proved, and the plaintiffs' right of action defeated. But the apprehension of the plaintiffs, that such might be the case, and the fear of the defendants, that it could not be established, led to the settlement ; and each party sat down and agreed to share the loss, though in different proportions. To disturb a settlement made under such circumstances, instead of promoting the ends of justice, would enlarge the field of discord, and would raise new obstacles to compromises between parties, and thus create a just cause of regret ; as such agreements are usually founded upon mutual concessions, and generally with advantage to each party.

The defendants' counsel has cited sundry authorities to maintain the position, that adjustments will be set aside when agreed to under a mistake of facts not known at the time. The cases referred to principally relate to adjustments of losses made at the time of offering the preliminary proof, and before any suit brought, and where there is no new consideration between the

parties ; and the cases go to establish the doctrine, that such adjustments are not conclusive, but only *primâ facie* evidence of the plaintiffs' claim. Without entering into an analysis of those authorities, it is sufficient to say, that admitting their correctness, they do not affect the decision made in the present case. This is not an adjustment grounded on the plaintiffs' representation of the facts, but a *bonâ fide* settlement of a disputed claim, after action brought, upon a valid consideration, without fraud, and with equal knowledge on either part.

The case finds that the plaintiffs were mortgagees or pledgees of the vessel, for moneys actually due, to an amount greater than the sum insured, and that Fields was the master and general owner of the vessel. And it was argued by the counsel for the defendant, that the plaintiffs must be treated as the owners of a part of the vessel ; in which case Fields, the master, was their servant or agent, for whose acts they are responsible ; or they take their interest under him, and consequently have no higher or greater rights than if Fields were the insured.

But we consider this merely varying the form of presenting the argument in favor of opening the compromise, and not an independent position. For if a mortgagee out of possession is not affected by the fraudulent act of the master who is the general owner, then the defence, if it had been proved in this case, would not have availed the defendants. And on the other hand, if such fraudulent acts would, if proved, have barred the plaintiffs' recovery, then this ground of defence was the very subject which led to the compromise, and which, for the reasons given, is conclusive upon the defendants.

The suggestion also made at the argument, that the settlement of the master's suit, at the same time with the plaintiffs', tends to establish the fact that they were one and the same transaction, and therefore the plaintiffs in this suit must be considered in the same manner as though captain Fields himself were the plaintiff — is not warranted by the circumstances under which the settlement was made. And in justice to the master, who is a stranger, it is but proper to say, that the alleged facts, which

the defendants proposed to offer in evidence, being excluded by the decision of the court, we do not intend, by any thing in this opinion, to impute a gross fraud to him, of which he may have been entirely innocent.

*Judgment on the verdict.*